**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


John Kalantzis

        v.                                    Civil No. 13-cv-12-JL

Carolyn W. Colvin, Acting
Commissioner, Social Security
Administration


**REPORT AND RECOMMENDATION**


        Pursuant to 42 U.S.C. § 405(g), John Kalantzis moves to

reverse the Acting Commissioner's decision to deny his

application for Social Security disability insurance benefits,

or DIB, under Title II of the Social Security Act, 42 U.S.C. §

423, and for supplemental security income, or SSI, under Title

XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves

for an order affirming her decision.  For the reasons that

follow, I recommend that the decision of the Acting

Commissioner, as announced by the Administrative Law Judge

("ALJ") be affirmed.


**Standard of Review**

        The applicable standard of review in this case provides, in

pertinent part:

        The [district] court shall have power to enter, upon
        the pleadings and transcript of the record, a judgment
        affirming, modifying, or reversing the decision of the

> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Commissioner]

to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991) (citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether the decision of the Acting Commissioner is supported by substantial evidence, this court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

**Background**

The parties have submitted a Joint Statement of Material Facts, document no. 14.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

Kalantzis's medical history includes the following diagnoses: (1) HIV; (2) adjustment disorder with anxious mood and cocaine dependence, NOS,[1] in remission with structured

---

[1] "NOS" is an abbreviation of "not otherwise specified." Webster's Third New International Dictionary 1542 (1993).

setting; (3) anxiety disorder, NOS; (4) anxiety disorder, not

otherwise specified; cocaine dependence in partial remission;

opioid dependence, in partial remission; and personality

disorder, NOS; (5) anxiety disorder, NOS; cocaine dependence in

early full remission; opioid dependence in early full remission;

and antisocial personality disorder; and (6) anxiety syndrome.

His treatment has included medication for HIV and, for his

mental-health issues, trazodone,[2] hydroxyzine,[3] clonidine,[4]

Ativan,[5] group therapy, and Alcoholics Anonymous ("AA") meetings.

In August of 2010, a state-agency psychologist, Dr. Louis

Perrott, reviewed the evidence of record and completed a

psychiatric review technique on Kalantzis.  In so doing, he

considered the listing for anxiety disorders, Listing 12.06, and

---

[2] Trazodone hydrochloride is "an antidepressant used to treat major depressive episodes with or without prominent anxiety."  Dorland's Illustrated Medical Dictionary 1983 (3d ed. 2007).

[3] Hydroxyzine is "a piperazine derivative with central nervous system depressant . . . actions."  Dorland's, supra note 1, at 896.

[4] Clonidine hydrochloride is "an $\alpha_2$ adrenergic agonist-antagonist . . . administered . . . in the treatment of . . . anxiety . . . and opioid withdrawal."  Dorland's, supra note 1, at 379.

[5] Ativan is a "trademark for preparations of lorazepam."  Dorland's, supra note 1, at 174.  Lorazepam is "a benzodiazepine with anxiolytic and sedative effects, administered . . . in the treatment of anxiety disorders and [for] short-term relief of anxiety symptoms."  Id. at 1089-90.

with regard to the "B Criteria" of that listing, he determined
that Kalantzis had no restrictions in his activities of daily
living; mild difficulties both in maintaining social functioning
and in maintaining concentration, persistence, and pace; and no
episodes of decompensation of extended duration.  See
Administrative Transcript (hereinafter "Tr.") 64, 72.

In December of 2011, Kalantzis was seen by Dr. William
Jamieson for a psychiatric evaluation in connection with an
application for Medicaid benefits.  Dr. Jamieson provided the
following diagnostic impression:

        Axis I:   Cocaine dependence
                  MDD [major depressive disorder]

        Axis II:  R/O Personality Disorder

Tr. 476.  With regard to Kalantzis's functional abilities, Dr.
Jamieson found moderate functional losses in the areas of daily
activities and work-related stress reaction (deterioration and
decompensation), and marked functional losses in the areas of
social interaction and work-related task performance
(concentration, persistence, and pace).  He further opined that
Kalantzis had a "guarded" prognosis for returning to gainful
employment and estimated that Kalantzis would able to return to
work in three to four years, provided that he complied with
recommended treatment.  Id.

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

3.  The claimant has the following severe impairments: positive HIV status with chronic Hepatitis C, substance abuse disorder, an anxiety disorder and an affective disorder (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant should avoid exposure to temperature extremes.  He is limited to performing uncomplicated tasks.

. . . .

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . . .

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 16, 18, 19, 21, 22.  While there was a Vocational Expert ("VE") in attendance at the hearing, neither the ALJ nor Kalantzis's counsel posed any questions to the VE.

## Discussion

According to Kalantzis, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) erroneously determined that his mental impairment(s) did not meet or equal the severity of a listed impairment; and (2) erred by failing to obtain testimony from the VE who was in attendance at the hearing.  Kalantzis also states that "[t]he ALJ . . . failed to take into consideration [his] testimony that he has been unable to pursue medical and psychiatric treatment due to a lack of insurance and income," Pl.'s Mot. for J. (doc. no. 11) 8, but Kalantzis's two-sentence "argument" is insufficiently developed to merit the court's attention, see Montero v. Colvin, No. 12-cv-412-JL, 2013 WL 4042424, at *1 n.1 (D.N.H. Aug. 8, 2013) (citing Dillon v. Astrue, No. 11-cv-328-PB, 2012 WL 4794360, at *8 n.4 (D.N.H. Oct. 9, 2012); McGrath v. Astrue, No. 10-cv-455-JL, 2012 WL 976026, at *1 n.5 (D.N.H. Mar. 22, 2012)); see also Dawes v. Astrue, No. 1:11-cv-272-DBH, 2012 WL 1098449, at *7 (D. Me. Mar. 30, 2012) (characterizing claimant's "four-sentence argument" as "not sufficiently presented to require

further separate consideration"). Neither of Kalantzis's two
adequately developed arguments has merit.

### A. The Legal Framework

To be eligible for disability insurance benefits, a person
must: (1) be insured for such benefits; (2) not have reached
retirement age; (3) have filed an application; and (4) be under
a disability. See 42 U.S.C. §§ 423(a)(1)(A)-(D). To be
eligible for supplemental security income, a person must be
aged, blind, or disabled, and must meet certain requirements
pertaining to income and assets. See 42 U.S.C. § 1382(a). The
question in this case is whether Kalantzis was under a
disability.

For the purpose of determining eligibility for disability
insurance benefits,

> [t]he term "disability" means . . . inability to
> engage in any substantial gainful activity by reason
> of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A)
(setting out a similar definition of disability for determining
eligibility for SSI benefits). Moreover,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,

considering his age, education, and work experience,
engage in any other kind of substantial gainful work
which exists in the national economy, regardless of
whether such work exists in the immediate area in
which he lives, or whether a specific job vacancy
exists for him, or whether he would be hired if he
applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also

42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for

determining eligibility for SSI benefits).

To decide whether a claimant is disabled for the purpose of

determining eligibility for either DIB or SSI benefits, an ALJ

is required to employ a five-step process.  See 20 C.F.R. §§

404.1520 (DIB) & 416.920 (SSI).

The steps are: 1) if the [claimant] is engaged in
substantial gainful work activity, the application is
denied; 2) if the [claimant] does not have, or has not
had within the relevant time period, a severe
impairment or combination of impairments, the
application is denied; 3) if the impairment meets the
conditions for one of the "listed" impairments in the
Social Security regulations, then the application is
granted; 4) if the [claimant's] "residual functional
capacity" is such that he or she can still perform
past relevant work, then the application is denied; 5)
if the [claimant], given his or her residual
functional capacity, education, work experience, and
age, is unable to do any other work, the application
is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the
> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform.  Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).  If the [claimant's] limitations are
> exclusively exertional, then the Commissioner can meet
> her burden through the use of a chart contained in the
> Social Security regulations.  20 C.F.R. § 416.969;
> Medical-Vocational Guidelines, 20 C.F.R. pt. 404,
> subpt. P, App. 2, tables 1-3 (2001), cited in 20
> C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458
> (1983). "The Grid," as it is known, consists of a
> matrix of the [claimant's] exertional capacity, age,
> education, and work experience.  If the facts of the
> [claimant's] situation fit within the Grid's
> categories, the Grid "directs a conclusion as to
> whether the individual is or is not disabled." 20
> C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited
> in 20 C.F.R. § 416.969.  However, if the claimant has
> nonexertional limitations (such as mental, sensory, or
> skin impairments, or environmental restrictions such
> as an inability to tolerate dust, id. § 200(e)) that
> restrict his [or her] ability to perform jobs he [or
> she] would otherwise be capable of performing, then
> the Grid is only a "framework to guide [the]
> decision," 20 C.F.R. § 416.969a(d) (2001).  See also
> Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)
> (discussing use of Grid when applicant has
> nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the [claimant] or other witness;

and (3) the [claimant]'s educational background, age,
and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797
F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690
F.2d 5, 6 (1st Cir. 1982)).

### B. Kalantzis's Arguments

As noted, Kalantzis advances two arguments.  The court
considers each in turn.

#### 1. Step 3

At Step 3, the ALJ considered the listing criteria for
three mental impairments, affective disorders (Listing 12.04),
anxiety-related disorders (Listing 12.06), and substance
addiction disorders (Listing 12.09).  To establish that he
suffers from an impairment or combination of impairments that
meets or equals the severity of any of the potentially
applicable listed impairments, Kalantzis must show his
impairment results in at least two of the following "Paragraph
B" criteria, which are components of each of the three listings
at issue:

> 1. Marked restriction of activities of daily
> living; or
>
> 2. Marked difficulties in maintaining social
> functioning;
>
> 3. Marked difficulties in maintain concentration,
> persistence, or pace; or

            4. Repeated episodes of decompensation, each of
        extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04B, 12.06B & 12.09B.

In reaching her conclusion that Kalantzis's mental impairment(s)

did not meet or medically equal the severity of any of the three

listings she considered, the ALJ found that Kalantzis had: (1)

mild restrictions in his activities of daily living; (2) mild

difficulties in social functioning; (3) moderate difficulties in

maintaining concentration, persistence, or pace; and (4)

experienced no episodes of decompensation.  Because she gave

only limited weight to the opinions of Drs. Perrott and

Jamieson, the ALJ relied in large measure on evidence from the

Function Report Kalantzis submitted in support of his

application for benefits and, to a somewhat lesser extent, on

records from Bedford Counseling Associates.

        There is no evidence that Kalantzis had marked restrictions

in his activities of daily living or had repeated episodes of

decompensation, each of extended duration.  Thus, to prevail, he

must show that the ALJ erred in determining that he did not have

marked difficulties in both maintaining social functioning and

maintaining concentration, persistence, and pace.  He has not

done so, because the ALJ's determination that Kalantzis suffered

from mild difficulties in maintaining social functioning is

supported by evidence that "a reasonable mind might accept as
adequate to support [her] conclusion," Currier, 612 F.2d at 597
(citation omitted).  That evidence includes: (1) Kalantzis's own
reports, to both the SSA and several counselors, concerning his
positive participation in counseling, at AA, and with the
Greater Manchester AIDS Project; and (2) Dr. Perrott's
psychiatric review technique findings.

As a general matter, Kalantzis's Step 3 arguments amount to
little more than invitation to the court to re-weigh the
evidence before the ALJ.  That approach is a non-starter.  See
Irlanda Ortiz, 955 F.2d at 769.  Beyond that, Kalantzis contends
that the ALJ erred by ignoring Dr. Jamieson's evaluation.  That
argument, however, is impossible to square with the ALJ's
careful evaluation of Dr. Jamieson's opinion, see Tr. at 21, and
the perfectly acceptable reasons she gave for affording that
opinion "some, but limited weight."  Id.  Those reasons include:
(1)  inconsistencies between Dr. Jamieson's opinion and
Kalantzis's Function Report, see 20 C.F.R. §§ 404.1527(c)(4) &
416.927(c)(4) (establishing consistency with the record as a
whole as a factor that counsels in favor of giving more weight
to an medical opinion); (2) the fact that Dr. Jamieson did not
treat Kalantzis but saw him only once, for an examination, see
20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(4) (establishing a

preference for opinions from treating sources, who "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)"); and (3) the fact that Dr. Jamieson based his opinion largely upon Kalantzis's self-reporting, see Widlund v. Astrue, No. 11-cv-371-JL, 2012 WL 1676990, at *12 (D.N.H. Apr. 16, 2012) (explaining "that a treating physician's report of a claimant's subjective complaints does not transform those complaints into either objective medical findings . . . or treating-physician opinions entitled to deference") (citing Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996); Reeves v. Barnhart, 263 F. Supp. 2d 154, 161 (D. Mass. 2003)), adopted by Widlund v. U.S. Soc. Sec. Admin, Comm'r, No. 11-cv-371-JL, 2012 WL 1676984 (D.N.H. May 14, 2012).  In sum, because the ALJ's Step 3 determination is supported by substantial evidence, that aspect of her decision provides no grounds for reversal or remand.

2. Step 5

The ALJ determined that Kalantzis had the residual functional capacity to perform light work, so long as he avoided exposure to temperature extremes, and further determined that he was "limited to performing uncomplicated tasks," Tr. 19.  Based upon those determinations, the ALJ had this to say, at Step 5:

> If the claimant had the residual functional capacity
> to perform the full range of light work, considering

14

> [his] age, education, and work experience, a finding
> of "not disabled" would be directed by Medical-
> Vocational Rule 202.21.  However, the additional
> limitations have little or no effect on the
> occupational base of <u>unskilled light work</u>.  A finding
> of "not disabled" is therefore appropriate under the
> framework of this rule (SSR 85-15).

Tr. 22 (emphasis added).  Given the ALJ's reference to "the
occupational base of unskilled light work," the "additional
limitations" to which she referred were, necessarily, limited to
Kalantzis's need to avoid exposure to temperature extremes.

Kalantzis argues that the ALJ erred by not eliciting
testimony from the VE, because his mental impairment(s), which
limited him to performing uncomplicated tasks, rendered the
Medical-Vocational Guidelines ("M-V Guidelines") wholly
inapplicable which, in turn, required the ALJ to solicit
testimony from a VE.  That is not correct.

Kalantzis correctly points out that the M-V Guidelines "may
not be fully applicable where the nature of an individual's
impairment does not result in [strength] limitations, e.g.,
certain mental, sensory, or skin impairments."  20 C.F.R. Pt.
404, Subpt. P., App. 2, § 200.00(e).  But where, as here, the
non-strength limitation on which the claimant focusses is a
limitation to performing "uncomplicated work-related tasks," Tr.
21, that limitation is already incorporated into the M-V
Guidelines, which renders the guidance of § 200.00(e)

inapplicable.  First, there can be no doubt that a limitation to "uncomplicated tasks" is the same thing as a limitation to "unskilled work."  See 20 C.F.R. §§ 404.1568(a) & 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.")  And second, the M-V Guidelines provide that

> [t]he functional capacity to perform a wide or full range of light work represents substantial work capacity compatible with making a work adjustment to substantial numbers of unskilled jobs and, thus, generally provides sufficient occupational mobility even for severely impaired individuals who are not of advanced age and have sufficient educational competencies for unskilled work.[6]

20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(b).

Based upon the foregoing, the ALJ's finding that Kalantzis "retain[ed] the residual functional capacity to perform [only] uncompleted work-related tasks," Tr. 21, but needed to avoid exposure to temperature extremes, was a finding that Kalantzis's "nonexertional impairment [did not] 'significantly affect[ ] [his] ability to perform a full range of jobs' at the appropriate strength level." Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991) (quoting Lugo v. Sec'y of HHS, 794 F.2d 14, 17 (1st Cir. 1986); citing Ortiz v. Sec'y of HHS, 890 F.2d

---

[6] It is undisputed that Kalantzis, who was born in 1977, is not of advanced age, see 20 C.F.R. §§ 404.1563(c) & 416.963(c), and it is also undisputed that, because he had at least a high school education, he had sufficient educational capacities for unskilled work, see 20 C.F.R. §§ 404.1564(b)(4) & 416.964(b)(4).

16

520, 524 (1st Cir. 1989)).  Thus, the ALJ was not obligated to elicit testimony from a VE before she could make a proper Step 5 determination.  See Heggarty, 947 F.2d at 996 (citation omitted).

Kalantzis also argues that the ALJ erred because she failed to

> give the vocational expert the opportunity to consider whether, given [his] testimony, concerning his fatigue and inability to maintain employment due to anger management issues and the marked difficulties reported by both Dr. Jamieson and the Bedford Counseling therapists, he was capable of substantial gainful employment.

Pl.'s Mot. for J. (doc. no. 11) 8.  That argument fails for several reasons.

Most importantly, while the Commissioner bears the burden, at Step 5, of "coming forward with evidence of specific jobs in the national economy that the [claimant] can still perform," Seavey, 276 F.3d at 5 (citation omitted), that burden does not extend to developing a record for an unsuccessful claimant to use when appealing an unfavorable decision.  That is what Kalantzis faults the ALJ for here.  As explained above, however, because the ALJ believed, correctly, that she had satisfied the Commissioner's Step 5 burden by relying upon the M-V Guidelines as a framework to guide her decision, see Seavey, 276 F.3d at 5, she had no obligation, in the first instance, to elicit

testimony from the VE, see Heggarty, 947 F.2d at 996 (citation
omitted).  Absent any obligation to elicit VE testimony, the ALJ
surely had no obligation to elicit testimony favorable to
Kalantzis.  Moreover, at the hearing, the ALJ stated that she
did not have any questions for the VE, and asked Kalantzis's
counsel whether she had anything further.  See Tr. at 57.
Presented with what appears to have been an opportunity to
question the VE herself, Kalantzis's counsel said she had
nothing further to add.  See id.  Under those circumstances, the
ALJ cannot be faulted for declining to question the VE.

### Conclusion

Because the ALJ has committed neither a legal nor a factual
error in evaluating Kalantzis's claim, see Manso-Pizarro, 76
F.3d at 16, I recommend that: (1) Kalantzis's motion for an
order reversing the Acting Commissioner's decision, document no.
11, be denied; and (2) the Acting Commissioner's motion for an
order affirming her decision, document no. 13, be granted.

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617

F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge


December 16, 2013

cc:  Leslie C. Nixon, Esq.
     T. David Plourde, Esq.